# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF DELAWARE

| | |
|---|---|
| YOUTUBE, LLC and GOOGLE LLC, | Misc. Action No.: _____ |
| Plaintiffs, | (Related Action Civ. No. 3:20-cv-04423-JD (N.D. Cal.)) |
| v. | |
| INTELLECTUAL PROPERTY LLC, | |
| Defendant. | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO THIRD-PARTY SUBPOENA**

WILSON SONSINI GOODRICH & ROSATI, P.C.
Ian R. Liston (DE Bar ID# 5507)
Jennifer A. Ward (DE Bar ID # 6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
Tel.: (302) 304-7600
Fax: (302) 974-7329
*iliston@wsgr.com*
*jward@wsgr.com*

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

CERTIFICATE OF COMPLIANCE WITH D. DEL. LR 7.1.1...................................................... 1

PARTIES ............................................................................................................................. 1

JURISDICTION AND VENUE ........................................................................................... 1

    I.      STATUS OF UNDERLYING ACTION ............................................................. 2

    II.     YOUTUBE'S COUNTERCLAIM ALLEGATIONS IN UNDERLYING ACTION ............................................................................................................. 3

YOUTUBE'S SUBPOENA TO IPLLC ................................................................................ 6

    III.    ARGUMENT ...................................................................................................... 8

          A.     YouTube's Subpoena Seeks Relevant Information that Is Central to the Underlying Action ............................................................. 8

          B.     The Subpoena Requests Are Not Unduly Burdensome ........................... 12

    IV.    CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Finjan, Inc. v. Zscaler, Inc.*,
    2019 WL 618554 (N.D. Cal. Feb. 14, 2019) ............................................................. 13, 14

*Giorgi Glob. Holdings, Inc. v. Smulski*,
    2020 WL 2571177 (E.D. Pa. May 21, 2020) ............................................................ 13, 14

*In re Generic Pharms. Pricing Antitrust Litig.*,
    2021 WL 5356509 (E.D. Pa. Nov. 17, 2021) ................................................................. 12

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ........................................................................................ 16

*Maria Schneider et al. v. Google LLC and YouTube, LLC*,
    Case No. 3:20-cv-04423-JD (N.D. Cal. filed July 2, 2020) ............................................ 2

*New Atl. Venture Fund III, L.P. v. Vir2us, Inc.*,
    2016 WL 3583797 (D. Del. June 30, 2016) .................................................................... 8

*Rhodes v. Pfeiffer*,
    2017 WL 11602540 (C.D. Cal. July 14, 2017) .............................................................. 13

*Verisign, Inc. v. XYZ.com, LLC*,
    2015 WL 7960976 (D. Del. Dec. 4, 2015) ....................................................................... 8

*Viacom Int'l Inc. v. YouTube, Inc.*,
    940 F. Supp. 2d 110 (S.D.N.Y. 2013) ............................................................................. 3

**STATUTES**

17 U.S.C. § 101 *et seq*............................................................................................. *passim*

17 U.S.C. § 512(f) ........................................................................................................ 5, 15

**RULES**

D. Del. LR 7.1.1 .................................................................................................................. 1

Fed. R. Civ. P. 26 .......................................................................................................... 1, 8

Fed. R. Civ. P. 45 ................................................................................................... *passim*

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, YouTube, LLC ("YouTube") and Google LLC ("Google") (collectively, "YouTube"), the Defendants and Counterclaimants in the underlying action, by and through their attorneys, respectfully move for an Order compelling Intellectual Property LLC ("IPLLC") to produce documents that were requested in the subpoena *duces tecum* served on IPLLC on June 2, 2021 (the "Subpoena").

## CERTIFICATE OF COMPLIANCE WITH D. DEL. LR 7.1.1.

As set forth below and in the accompanying declaration, counsel for YouTube has conferred extensively with counsel for IPLLC through two meet and confers and eleven letters in an attempt to resolve any issues relating to the Subpoena. Specifically, YouTube and IPLLC's respective counsel met and conferred on July 16, 2021 and again on April 14, 2022 with YouTube and IPLLC's respective Delaware counsel both present at the second meeting. Despite YouTube's counsel's efforts, the parties have been unable to resolve the issues and IPLLC has yet to produce critical documents. IPLLC will not comply with the Subpoena absent a Court order.

## PARTIES

Google LLC is a Delaware limited liability company with a principal place of business in Mountain View, California. YouTube, LLC, a Google subsidiary, is a Delaware limited liability company with its principal place of business in San Bruno, California. Upon information and belief, Intellectual Property LLC is a corporation organized under the laws of the State of Delaware with its principal place of business in Delaware.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to Fed. R. Civ. P. 45 in that YouTube seeks to enforce a Subpoena that requires compliance within this district.

**I.     STATUS OF UNDERLYING ACTION**

This is a miscellaneous action under Fed. R. Civ. P. 45. YouTube respectfully asks this Court to compel the production of documents in compliance with a Subpoena issuing out of the Northern District of California to IPLLC, a Delaware company, with respect to the pending litigation *Maria Schneider et al. v. Google LLC and YouTube, LLC*, Case No. 3:20-cv-04423-JD (N.D. Cal. filed July 2, 2020).

Pirate Monitor Ltd. ("Pirate Monitor"), a company claiming a principal place of business in the British Virgin Islands, filed the underlying copyright infringement action together with Maria Schneider ("Schneider") against Google and YouTube in July 2020 on behalf of a putative class. After an investigation, YouTube responded by showing that Pirate Monitor and its sole owner, Gábor Csupó ("Csupó"), had engineered a wide-ranging fraud seeking access to YouTube's proprietary copyright management tools. Specifically, YouTube alleged that Pirate Monitor and Csupó had flooded the YouTube service with videos, and then sent fraudulent notices alleging that the very same videos they had uploaded infringed copyrights. YouTube asserted Counterclaims seeking to hold Pirate Monitor and Csupó liable for their misconduct. Declaration of Jennifer A. Ward ("Ward Decl."), ¶ 3, Ex. B (Amended Counterclaims ("AC"), D.I. 60). After YouTube exposed its scheme and brought counterclaims, Pirate Monitor dismissed its entire affirmative case with prejudice on March 8, 2021. D.I. 66.[1]

Unfortunately, Pirate Monitor and Csupó have responded to YouTube's discovery into its Counterclaims with a corporate shell game. Csupó has claimed that it was another company he controls, IPLLC, rather than Pirate Monitor Ltd. that was responsible for the video uploads and

---

[1] Citations to docket numbers herein refer to filings in the underlying action: *Maria Schneider et al. v. Google LLC and YouTube, LLC*, Case No. 3:20-cv-04423-JD (N.D. Cal. filed July 2, 2020).

takedowns. Csupó maintains that IPLLC is a legitimate, distinct entity and refused to produce relevant documents over which he has control, claiming they belong to IPLLC. YouTube thus was forced to subpoena IPLLC.

IPLLC—represented by the same attorneys representing Pirate Monitor and Csupó— has been equally obstructionist. It claims that the tailored documents YouTube seeks regarding the scheme might be in the possession of two IPLLC employees in Hungary, but production would involve exorbitant expense. That specious claim is based on the imagined need for a complex review environment to satisfy European privacy law. It is meritless. IPLLC also has claimed that documents concerning IPLLC's observance of corporate formalities, or lack thereof, are not relevant. That too is wrong. As set forth below, IPLLC's objections have precluded YouTube from obtaining materials bearing directly on its Counterclaims. YouTube thus requires the Court's assistance to obtain production.

## II. YOUTUBE'S COUNTERCLAIM ALLEGATIONS IN UNDERLYING ACTION

YouTube provides a platform for users to share their video creations with the world while offering a worldwide audience the opportunity to access and watch an extraordinarily diverse library of original, creative expression. Ward Decl., Ex. B (AC, ¶¶ 14-15). Within the massive volume of video content uploaded to the platform by users, there is undoubtedly some that makes use of third party content without authorization of the copyright holder. YouTube goes to great lengths to assist copyright owners in protecting against such unauthorized use. For one thing, it fully complies with the safe harbor provisions of the Digital Millennium Copyright Act, 17 U.S.C. §§ 101 *et seq.* ("DMCA") and expeditiously responds to notices of alleged infringement from copyright holders. *See Viacom Int'l Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y. 2013) (holding as a matter of law that YouTube is entitled to the DMCA's safe harbor

protection). But YouTube's efforts go far beyond what the law requires. Ward Decl., Ex. B (AC, ¶¶ 17-18). At a cost of well over 100 million dollars, YouTube developed its proprietary Content ID technology, a best-in-class automated content identification system to help find copyrighted materials on YouTube and implement the copyright holders' directives regarding such materials. *Id.*, ¶ 18. Rightsholders can use Content ID to, *inter alia*, claim content as their own and make money from associated advertising, have the content automatically removed, or block the content from appearing in the first place. Because Content ID is such a powerful tool, it has the potential to be misused to, among other things, censor videos that others have every right to share and to incorrectly claim ownership rights in others' content. As such, YouTube limits access to the tool. *Id.*, ¶¶ 19-20.

In 2019, Csupó submitted applications for YouTube's Content ID that bore his signature. He subsequently corresponded with YouTube about one of those applications as the purported Managing Director of "Pirate Monitor LLC". *See id.*, ¶ 43. YouTube denied the applications. It explained that access to YouTube's copyright management tools was predicated in part on demonstrating both a need for such access and a history of properly using the DMCA takedown notice process. *Id.*, ¶ 44.

Pirate Monitor and Csupó then set out to manufacture a need for access to the tools. *Id.*, ¶¶ 1, 45. Using unknown agents (including at least one known agent in Pakistan) to mask their involvement, Pirate Monitor and Csupó uploaded nearly two thousand video clips to YouTube. They then promptly sent YouTube takedown notices under the DMCA demanding that YouTube remove the very same videos they had uploaded. In those takedown notices, which bore Csupó's signature and were submitted from a YouTube account opened in the name "Pirate Monitor LLC," Pirate Monitor and Csupó represented to YouTube under penalty of perjury that the

targeted videos infringed copyrights that they were hired to protect. When YouTube received these DMCA takedown notices, it did not know that the parties insisting that the videos were infringing and should be removed were the same parties that had uploaded or directed the upload of the videos in the first place. YouTube processed the approximately 1,800 separate notices from Pirate Monitor and Csupó in reliance on their representations that the videos were infringing. *Id*., ¶¶ 1, 35-38, 45, 50.

After YouTube discovered smoking gun evidence of the scheme, it asserted claims against Pirate Monitor and later Csupó. *Id*., ¶¶ 48-53. If the videos they had uploaded actually infringed copyrights, then they were guilty of breaching their contract with YouTube and of fraud, for uploading videos they had no right to share. If, instead, the videos did not infringe copyrights, they were guilty of making knowingly false representations in their DMCA takedown notices in violation of 17 U.S.C. § 512(f). *Id*., ¶¶ 54-85. YouTube asserted alter ego and veil piercing theories against Csupó, claiming that as managing director, sole stockholder, and sole decision maker of Pirate Monitor, he was its alter ego, and that Pirate Monitor disregards corporate formalities, is inadequately capitalized and commingles funds and other assets with Csupó. *Id*. YouTube seeks an injunction to prevent further fraudulent activity, and over $150,000 in compensatory damages on its claims, as well as punitive damages. *Id*. at 22; Ward Decl., ¶ 4.

In response to YouTube's complaint, Csupó admitted that "Pirate Monitor LLC," the entity named in connection with his Content ID application and takedown notices sent to YouTube, did not actually exist (*see* Ward Decl., Exs. C and D (Csupo's Answer at 3, D.I. 69; Csupó's Responses to Interrogatory No. 6). It was a name Csupó made up to incorrectly suggest a corporation was involved. Csupó then averred that it was IPLLC – a Delaware company of

which Csupó is a Director and Shareholder – rather than Pirate Monitor, that sent YouTube the bogus takedown notices. Ward Decl., Exs. C and D (Csupo's Answer at 2-3 and ¶¶ 35-36; Csupó's Responses to Interrogatory Nos. 3 and 8). Indeed, the DMCA takedown notices signed by Csupó and sent from his YouTube account (opened in the name Pirate Monitor LLC) listed an email address of usintellectualpropertyllc@gmail.com (emphasis added). Ward Decl., Ex. B (AC, ¶ 35). To the extent IPLLC has a separate corporate existence, it appears to be one of the agents that Pirate Monitor and Csupó used to perpetrate their scheme and mask their involvement.

## YOUTUBE'S SUBPOENA TO IPLLC

On June 2, 2021, YouTube served the Subpoena on IPLLC's registered agent, Harvard Business Services, Inc. at 16192 Coastal Highway, Lewes, DE 19958. *See* Ward Decl., Ex. E (Affidavit of Service). The Subpoena defines "IPLLC," "You," or "Your," as "Intellectual Property LLC; USIPLLC; and their employees, agents, officers, representatives, contractors, lawyers, affiliates, or any person or entity acting on their behalf or direction or under their control." Ward Decl., Ex. F (Subpoena).

The Subpoena contains ten targeted requests seeking documents bearing directly on YouTube's core allegations in the Counterclaims against Csupó (IPLLC's Director and Shareholder) and Pirate Monitor. For example, the Subpoena asks IPLLC to produce:

> Documents sufficient to identify IPLLC's current and former members, owners, shareholders, officers, directors, managers, employees, agents, and independent contractors and their positions (Request No. 1);
>
> Documents reflecting IPLLC's observance of corporate formalities, including without limitation its Certificate of Formation, Operating Agreement, filings with the Delaware Department of State, capitalization, financial statements, and minutes of member meetings (Request No. 2);

> All documents and Communications relating to DMCA Takedown Notices sent by [IPLLC] to YouTube, including without limitation Takedown Notices listing the email address usintellectualpropertyllc@gmail.com (Request No. 5); and
>
> All documents and Communications relating to the videos that were the subject of DMCA Takedown Notices sent to YouTube listing the email address; usintellectualpropertyllc@gmail.com (Request No. 6).

Ward Decl., Ex. F (Subpoena).

Through the same counsel that represents Pirate Monitor and Csupó, IPLLC served objections and responses on June 15, 2021. Ward Decl., Ex. G (IPLLC's Responses and Objections to Subpoena). In making a meager production of documents, IPLLC failed to produce much of what was sought by the Subpoena requests.[2] And it made clear that it is employing an unreasonable, cherry–picking approach to the Subpoena. Namely, IPLLC refuses to produce documents unless: (1) they are in Csupó's possession; (2) in the U.S.; and (3) Csupó has determined that the documents relate to IPLLC as opposed to one of the other entities he controls. Those are untenable positions. Critically, IPLLC does not deny that there are other responsive documents in Csupó's possession, or in the possession of other IPLLC personnel. But it says it has elected not to even search for, let alone produce responsive documents stored in Hungary, citing imaginary burden, and refuses to produce responsive documents concerning its observance of corporate formalities. It also promised to provide a privilege log over eight months ago, but has failed to do so.

---

[2] IPLLC's production consists of, *inter alia*, documents relating to yet another related corporate entity that Csupó has owned and controlled, some documents concerning the nature of IPLLC's business, correspondence between Csupó and IPLLC representatives located in Hungary, correspondence with YouTube, and a smattering of corporate documents. YouTube cannot describe the documents in more detail because IPLLC has designated them all confidential under the Protective Order in the case.

## III. ARGUMENT

### A. YouTube's Subpoena Seeks Relevant Information that Is Central to the Underlying Action

Federal Rule of Civil Procedure 45 obligates nonparties to produce documents responsive to a subpoena served on them. Fed. R. Civ. P. 45(d). Rule 26(b) defines the scope of discovery for a subpoena issued pursuant to Rule 45. *See Verisign, Inc. v. XYZ.com, LLC*, 2015 WL 7960976, at *1 & n.5 (D. Del. Dec. 4, 2015) (citing Fed. R. Civ. P. 45 Advisory Committee's Note to 1970 amendment); *accord New Atl. Venture Fund III, L.P. v. Vir2us, Inc.*, 2016 WL 3583797, at *2 (D. Del. June 30, 2016). Under Fed. R. Civ. P. 26(b), parties are entitled to obtain discovery materials "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Under the proportionality requirement, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Information need not be admissible in evidence to be discoverable. *Id*. "[I]t is well recognized that the federal rules allow broad and liberal discovery." *Verisign, Inc.*, 2015 WL 7960976, at *3-4 (citation omitted); *accord New Atl. Venture Fund III, L.P.*, 2016 WL 3583797, at *3.

**Pirate Monitor and Csupó**. YouTube seeks documents from IPLLC that refer or relate to Pirate Monitor, Csupó, and/or YouTube's Copyright Protection Services (which include Content ID), as well as any agreements between IPLLC, on the one hand, and Pirate Monitor, Csupó, (or a movie production studio called Mega Film), on the other hand. *See* Ward Decl., Ex. F (Subpoena Request Nos. 3 and 4).

Csupó averred that the DMCA takedown notices at issue, which bore Csupó's authorized signature, were sent by IPLLC on behalf of Mega Film. Ward Decl., Exs. C and D (Csupó's Answer at 3 and ¶¶ 35-36; Csupó's Response to Interrogatory No. 3). Whether the uploaded videos that were the subject of those takedown notices infringed copyrights is key to YouTube's Counterclaims. If they did, Pirate Monitor and Csupó misrepresented their status when they, through their agent, uploaded them and promised that they had the rights to do so. If they did not infringe copyrights, Pirate Monitor and Csupó made material misrepresentations of infringement in sending takedown notices for them. Ward Decl., Ex. B (AC, ¶¶ 2, 4, 32-33, 36). These requests seek documents relevant to show which of Pirate Monitor and Csupó's representations were untrue. They also seek to uncover Pirate Monitor, Csupó and IPLLC's respective roles in the scheme to gain access to Content ID. Given that the nature of IPLLC's business appears narrow in scope, at best, these requests are likely to yield a small and targeted set of responsive documents.

**DMCA Takedown Notices**. YouTube seeks documents and communications relating to the DMCA takedown notices that IPLLC supposedly sent to YouTube, as well as the videos that were the subject of those takedown notices. *See* Ward Decl., Ex. F (Subpoena Request Nos. 5 and 6). Such documents are likely to show Csupó, Pirate Monitor, and IPLLC's use of YouTube to upload videos, the transmission promptly thereafter of DMCA takedown notices for those same videos, and the conflicting representations made to YouTube in connection with these activities. The requests also seek information to confirm the identity of the agents hired to upload the videos. While IPLLC has tried to cabin the scope of this request to DMCA takedown notices sent from August 2019 to November 2019, all DMCA takedown notices sent by IPLLC to YouTube are pertinent to Csupó and his entities' motivation to gain access to Content ID, their

unsuccessful Content ID applications, the scope of their scheme to gain access to the Content ID system (including misrepresentations made to YouTube), and the alter ego allegations insofar as they reflect the blurring of corporate lines among Csupó and his entities.

**IPLLC's agents**. YouTube seeks "[d]ocuments sufficient to identify IPLLC's current and former members, owners, shareholders, officers, directors, managers, employees, agents, and independent contractors and their positions." YouTube further seeks certain communications between IPLLC, on the one hand, and Endre Holman and Zoltán Búzás (individuals who performed relevant work for IPLLC), on the other hand. And YouTube has asked for communications between IPLLC and Sarfraz Arshad Khan ("Khan") and/or Ransom Nova (foreign nationals in Pakistan who were apparently hired to upload the subject videos to YouTube). Relatedly, YouTube seeks documents reflecting payments made by IPLLC to Khan or Ransom Nova; and "documents and Communications concerning YouTube accounts created or used by Sarfraz Arshad Khan and/or Ransom Nova and any videos uploaded to such accounts." *See* Ward Decl., Ex. F (Subpoena Request Nos. 1, 7, 8 and 9).

These requests bear directly on YouTube's allegations that Pirate Monitor and Csupó hired foreign nationals in Pakistan, potentially through IPLLC, to mask their own involvement in the upload of videos to YouTube and the subsequent takedown requests for those same videos. Ward Decl., Ex. B (AC, ¶¶ 1, 52-53).

**Observance of Corporate Formalities**. YouTube seeks "[d]ocuments reflecting IPLLC's observance of corporate formalities, including without limitation its Certificate of Formation, Operating Agreement, filings with the Delaware Department of State, capitalization, financial statements, and minutes of member meetings." *See* Ward Decl., Ex. F (Subpoena Request No. 2). While IPLLC has produced a sampling of such documents, it appears to have

PLAINTIFFS' MOTION TO COMPEL

withheld at least one operating agreement, filings with the Delaware Department of State, documents reflecting capitalization, financial statements, and minutes of member meetings.

All such documents are relevant to whether IPLLC and Pirate Monitor should be treated as distinct legal entities from one another and from Csupó. Ward Decl., Ex. B (AC, ¶¶ 6-8, 35, 43). The Counterclaims allege that Pirate Monitor is the alter ego of its sole owner Csupó. *Id*. Csupó has already demonstrated a track record of misrepresenting his supposed corporate affiliations by confessing that he used the name "Pirate Monitor LLC" in transmitting the DMCA takedown notices at issue, even though there is no such corporate entity. Ward Decl., Exs. C and D, (Csupó's Answer at 3; Csupó's Responses to Interrogatory No. 6). Csupó simply invented a Pirate Monitor alias with the corporate designation "LLC," despite knowing that no LLC of this name had been formed or registered. Csupó also has sent takedown notices to YouTube and applied to Content ID invoking the Pirate Monitor Ltd. name. Ward Decl., Ex. A (Complaint., ¶¶ 71-72, D.I. 1).

Now Csupó asserts that it was IPLLC (yet another entity he owns) that sent the takedown notices to YouTube. *See* Ward Decl., Exs. C and D (Csupó's Answer at 3 and ¶¶ 35-36; Csupó's Responses to Interrogatory Nos. 3 and 8). In those takedowns that Csupó signed, he used an email address, usintellectualpropertyllc@gmail.com, suggesting IPLLC's involvement, although the notices purported to come through a Pirate Monitor account on YouTube. *See* Ward Decl., Ex. B (AC, ¶¶ 35, 43). It is already plain that Csupó does not respect corporate identities and formalities and has attempted to insulate himself from liability by employing a web of related entities (or non-entities) that he controls. YouTube needs discovery to lay bare that it was Csupó behind it all.

-11-
PLAINTIFFS' MOTION TO COMPEL

## B. The Subpoena Requests Are Not Unduly Burdensome

IPLLC contends YouTube's subpoena is unduly burdensome because it is a third party that "has not inserted itself into [the] litigation." Ward Decl., Ex. G (IPLLC's Responses and Objections to Subpoena at 4). IPLLC thus refuses to produce documents from anyone other than Csupó himself, even from its agents who prepared or sent the DMCA takedown notices at issue. And even IPLLC's promise to produce documents from Csupó is restricted to documents that are in his "possession," in the U.S., **that Csupó deems belong to IPLLC**.[3] Ward Decl., ¶ 10. IPLLC has misstated both its discovery obligations and the facts.

IPLLC is not just any third party. As explained, Csupó, an owner and principal of IPLLC, affirmatively inserted IPLLC into this lawsuit by averring that it was IPLLC (not Pirate Monitor) who sent the DMCA takedown notices at issue. *See* Ward Decl., Exs. C and D (Csupó's Answer at 3 and ¶¶ 35-36; Csupó's Responses to Interrogatory Nos. 3, 6 and 8).

Regardless, Federal Rule of Civil Procedure 45(a)(1)(A)(iii) provides that the test for production sought by a subpoena is whether the documents, information, or tangible things are in the "possession, custody, or control" of the person on whom the subpoena is served. Control is defined as "the legal right to obtain the documents requested on demand." *In re Generic Pharms. Pricing Antitrust Litig.*, 2021 WL 5356509, at *3-4 (E.D. Pa. Nov. 17, 2021)

---

[3] IPLLC also appears to claim that it need not produce responsive documents in Csupó's possession and control, if Csupó himself decides he has obtained the documents in the guise of some other corporate entity. Allowing IPLLC to withhold documents based on Csupó's self-serving assertion of his role is problematic for several reasons. First, Csupó is involved in a complex web of interrelated corporations that YouTube cannot untangle without the documents it seeks. Second, Csupó lacks credibility on matters of corporate form having fabricated the existence of "Pirate Monitor LLC." Third, Csupó himself has produced only 44 documents in response to YouTube's requests. Finally, the documents produced by IPLLC, that were supposedly "in Csupó's possession" were not already produced by Csupó, though they should have been as they would have been responsive to requests directed to Csupó.

PLAINTIFFS' MOTION TO COMPEL

(citation omitted); *Rhodes v. Pfeiffer*, 2017 WL 11602540, at *3 (C.D. Cal. July 14, 2017) (same). Thus, IPLLC is required to produce documents from agents within its control.

Despite YouTube's request, IPLLC has not even confirmed the identity of all custodians with documents responsive to the Subpoena, though it has acknowledged at least two custodians, Zoltán Búzas and Endre Holman, both of whom appear to have performed highly relevant work on behalf of IPLLC and Pirate Monitor. *See* Ward Decl., ¶¶ 10-11, Ex. D (Csupó's Responses to Interrogatory Nos. 5). IPLLC refuses to produce documents from either.

Csupó has represented that Búzas, an IPLLC project manager, was involved in preparing and/or sending the DMCA takedown notices for IPLLC (Ward Decl., Exs. D and C (Csupó's Responses to Interrogatory Nos. 3 and 5; Csupó's Answer, ¶¶ 35-36), but IPLLC maintains that collecting documents from Búzas is unduly burdensome. According to IPLLC, collection of documents from Búzas would require compliance with the GDPR and the cost of compliance would be disproportionate to the amount in controversy. Ward Decl., ¶ 12. IPLLC has not met and cannot meet its burden to substantiate this objection. *See Giorgi Glob. Holdings, Inc. v. Smulski*, 2020 WL 2571177, at *1 (E.D. Pa. May 21, 2020) ("The party relying on foreign law has the burden of showing such law bars production.") (citation omitted); *accord Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019).

It is apparent that IPLLC's position is a smokescreen to avoid its obligations. To begin, the GDPR regulates *personal* data, which the Subpoena requests do not seek. IPLLC imagines that its agents' documents *might* include personal data. But it has not even looked for the documents YouTube requested so its argument is not credible. *See* D.I. 81 at 2-3 (arguing that the documents located in Hungary "*likely contain* personally identifiable information protected by GDPR" (emphasis added)); *see also* Ward Decl., ¶ 12. **Even if** some documents contain some

-13-

personal data, IPLLC does not offer any plausible explanation for why the cost of compliance with the GDPR would be so high (*see id.*), especially when documents containing personal data can be protected by the protective order and ESI protocol entered in the underlying action. D.I. 45 and 57. IPLLC has simply invented a burden to avoid even inquiring about relevant documents from key custodians.

Moreover, if IPLLC, a Delaware corporation (controlled by Csupó, a U.S. citizen) were able to claim GDPR protection over its project manager's documents simply because a custodian is located in Europe, the discovery process would be dramatically impaired. The law does not support that position. *Finjan, Inc.*, 2019 WL 618554, at *3 (holding that GDPR did not preclude court from ordering American company to produce documents from custodian located in Europe where, *inter alia*, requested documents were relevant to infringement claims and subject to protective order); *Giorgi Glob. Holdings, Inc.*, 2020 WL 2571177, at *2-3 (holding that defendant, a U.S. citizen, could not withhold documents located in Poland based on GDPR where, *inter alia*, documents were relevant to litigation and subject to protective order and ESI protocol).

To make matters worse, IPLLC's vendor costs are fictional. It claims that to even begin producing documents located in Hungary would cost between "at least" $32,000 and $52,900 based on collection from one custodian.[4] Ward Decl., ¶ 12. But IPLLC refuses to say how it calculated any of these figures, other than to claim they were provided by an unspecified vendor.

---

[4] While this "explanation" was initially provided by Pirate Monitor, IPLLC's counsel confirmed that IPLLC was adopting the same argument because the same custodians are at issue. *See also* Ward Decl., ¶ 12. Csupó, for his part, refuses to produce documents from the Hungarian custodians on the improper ground that those documents belong to the entities he controls and not him personally. That is, Csupó is ironically invoking some doctrine of corporate separateness to avoid producing documents that show such separateness was not practiced.

It would not disclose whether the vendor had even spoken to the relevant custodian, or whether anyone had identified the documents that would need to be processed (though it has admitted that the universe of possible documents would be found on just two laptops). *See* Ward Decl., ¶ 12. Instead, the vendor apparently was asked to assume what it might charge to set up some complex, transatlantic review process supposedly required to comply with the GDPR. *See id.*

In sum, based on an incorrect view that the GDPR is an obstacle to production, IPLLC imagines it will spend tens of thousands of dollars to create a review environment (and more to actually conduct a review). But it seems IPLLC has never assessed (e.g. by asking someone in Hungary), what volume of responsive information exists and whether it could comply with its legal obligations by more cost effective means. Put another way, even if there is just a single relevant document in its possession, IPLLC wants the Court to believe it will cost tens of thousands of dollars just to enable a review process, and still more to actually review and produce that document, because the GDPR supposedly requires such machinations. This fiction is not worthy of the Court's time.

IPLLC also wrongly characterizes the value of remedies sought by YouTube. YouTube seeks injunctive relief to prevent further misconduct by Pirate Monitor, Csupó and any of their agents — including any unknown agents identified through the Subpoena. Ward Decl., ¶ 4 and Ex. B (AC). YouTube also seeks more than $20,000 in investigative and remediation costs, and is entitled to punitive damages on its fraud claim. *Id*. Its damages also include its attorneys' fees (*id*.), which are mandatory and recoverable as damages under the DMCA. *See* 17 U.S.C. § 512(f)(2) (party guilty of misrepresentation in DMCA notice "shall be liable for any damages, including costs and attorneys' fees" that are "the result of the service provider relying upon such

misrepresentation").[5] YouTube's fees are substantial given Csupó and his entities' litigation conduct, including a make-work motion to dismiss. Ward Decl., ¶ 4; D.I. 44, 47, 52. To date, YouTube has incurred between $120,000 and $140,000 in attorneys' fees as a result of the misconduct alleged in the Counterclaims. Ward Decl., ¶ 4. IPLLC's "burden" and proportionality objection to producing documents beyond those in Csupó's possession in the U.S. is simply not well taken. It should be rejected and production compelled.

IPLLC makes similarly baseless burden objections for its other custodian, Holman. And it claims that it does not have a contractual right to obtain documents from him. Ward Decl., ¶ 12. But whether IPLLC has a contractual right to documents from Holman is beside the point. IPLLC is obligated to produce any documents pertaining to Holman's work for the company that are in IPLLC'S "possession, custody, or control," regardless of IPLLC's contractual arrangement with him. *See* Fed. R. Civ. P. 45 (a)(1)(A)(iii). If IPLLC has no such documents, then an order compelling production imposes no burden at all. If instead, IPLLC is playing semantic word games to shield relevant documents, such an order is plainly appropriate.

## IV. CONCLUSION

For the reasons set forth above, YouTube respectfully requests that the Court enter an order compelling IPLLC to produce (1) all documents responsive to Subpoena Request Nos. one through nine, including documents in the possession or custody of Endre Holman and Zoltán

---

[5] Pirate Monitor has contested the recoverability of litigation fees as damages, relying on a single district court decision (D.I. 81 at 2), but ignoring that, on appeal, the Ninth Circuit criticized the lower court's thinking on that point, albeit without directly reversing on the issue. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2016) (district court on remand should consider award of litigation costs and attorney's fees, "both of which arose as a result of the injury incurred").

Búzas, and (2) a privilege log for documents withheld and/or redacted on the basis of privilege, within 10 days of the date of the Court's order.

Respectfully submitted,

Dated: June 8, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Ian R. Liston*
Ian R. Liston (DE Bar ID# 5507)
Jennifer A. Ward (DE Bar ID # 6476)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
Tel.: (302) 304-7600
Fax: (302) 974-7329
*iliston@wsgr.com*
*jward@wsgr.com*

*Attorneys for Plaintiffs*